THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHERWIN JOHNSON, : | |
|     Plaintiff, : | |
| v. : | Civil Action |
|   : | No. 5:07-cv-277 (CAR) |
| OFFICER VERNON SMITH, : | |
|     Defendant. : | |

**ORDER ON RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the United States Magistrate Judge's Recommendation (Doc. 61) that Defendant's Motion for Summary Judgment (Doc. 46) be granted. Although Plaintiff has not entered an objection[1], the Court has conducted a *de novo* review of the arguments of the parties and the evidentiary materials on file. Upon review of this material, the Court agrees with the Magistrate Judge's conclusion that there are no genuine issues of material fact regarding Plaintiff's Eighth Amendment excessive force claim. Therefore, the Recommendation is **HEREBY ADOPTED AND MADE THE ORDER OF THE COURT**.

Plaintiff's only remaining claims in this case are against Officer Smith in his individual capacity. Plaintiff contends that Officer Smith subjected him to cruel and unusual punishment in violation of his rights under the Eighth Amendment, by applying leg shackles to Plaintiff's broken ankle while transporting him to another facility for x-rays. Plaintiff alleges two separate incidents,

---

[1] Citing health reasons, Plaintiff's counsel requested an extension of time to file an objection, but his request was denied.

on July 13, 2005, and on July 20, 2005. The claims related to the July 13 incident have been dismissed, however, as they were barred by the statute of limitations. Plaintiff also claims that Officer Smith acted with deliberate indifference to serious medical needs while Plaintiff was housed in a segregation cell.

The evidence on record fails to show that Officer Smith acted with a sadistic and malicious intent to cause harm when he shackled Plaintiff for transport on July 20, 2005. The record shows that Officer Smith simply followed policy in requiring Plaintiff to wear leg shackles. It is undisputed that application of leg shackles is required procedure for transportation of inmates from Rivers State Prison to other facilities. The record also shows that Officer Smith made efforts to avoid causing unnecessary pain in applying the shackles when leaving the prison for Plaintiff's x-ray appointment. Plaintiff has testified that Officer Smith sought and obtained a larger pair of shackles after Plaintiff expressed concern that the usual shackles would be too tight on his injured ankle. On the return trip, it is undisputed that Plaintiff was shackled with plastic shackles provided by officers of the other facility. Plaintiff concedes that these shackles were more comfortable and did not cause him pain. In light of undisputed evidence that Officer Smith attempted to accommodate Plaintiff's concerns about being shackled on July 20, 2005, Plaintiff cannot create a genuine issue of material fact that Officer Smith acted with the intent to cause an unnecessary and wanton infliction of pain.

The record shows that Plaintiff broke his left ankle while playing basketball at Rivers State Prison on July 13, 2005. He was transported to a medical clinic at Baldwin State Prison the same day to receive x-rays. He was transported a second time for follow-up x-rays on July 20, 2005. Both times, he was transported by Officer Smith. On all four trips to and from Baldwin, Officer Smith shackled Plaintiff's hands and feet, pursuant to the prison's Standard Operating Procedures

for the transport of prisoners. Plaintiff contends that Officer Smith intentionally applied the shackles in such a manner as to cause him extreme pain.

Plaintiff has given three separate accounts of his transport to and from Baldwin State Prison on both occasions. The first account is in a handwritten document written while he was still incarcerated and faxed to the prison in November 2005.[2] Pl.'s Dep. 36 (Doc. 46 Ex. E). The second account is in Plaintiff's deposition testimony, taken on March 30, 2009. The third account is in Plaintiff's affidavit, submitted in response to Defendant's Motion for Summary Judgment and dated August 19, 2009. These three accounts are generally consistent, although there are some differences among them, primarily in tone and emphasis.

Regarding the July 20 trip from Rivers to Baldwin, all three of Plaintiff's statements confirm that Officer Smith first attempted to shackle Plaintiff with a smaller set of shackles, but changed to a larger set after Plaintiff expressed his concern about the tightness of the shackles. In his handwritten statement, Plaintiff describes the trip as follows:

> I kind of gave in a bit to the shackles being placed on my left leg, plus my foot was wrapped so I'm thinking it shouldn't be too much pain, so I kept quiet until I noticed [Officer Smith] had the small pair of shackles. After he placed the right shackle on my right foot I told him that it was to tight all ready. So [Officer Smith] reached for the larger shackles and began placing them on my right foot and then my left foot. I guess due to the swelling and the wrap on my foot the larger shackle was also tight. So I said officer this is to tight. He replied well lift it up then. At that time CO II Fussell asked me is your leg swollen. (She was standing some feet back). I replied yes ma'am it is swollen. So [Officer Smith] [illegible] the van door and we went over to Baldwin State Prison. Upon arrival, [Officer Smith] took the handcuffs off of me and began taking off the right shackle. He attempted to take off the left shackle at which time said shackle got stuck. At that time I told [Officer Smith] that he wasn't putting those shackles back on my broken ankle on our way back to Rivers. He said shut your mouth. Then I said I'm serious man and you shut your mouth. [Officer Smith] then asked CO II Fussell for her keys because his would not

---

[2]Plaintiff was released from Rivers State Prison approximately a week after the July 20, 2005 incident.

3

>work.  So she gave him her keys.  Then [Officer Smith] took the shackles off of me
>and we proceeded into the building.

Pl.'s Dep. Ex. 1.

Plaintiff's deposition testimony generally follows his handwritten statement.  At his deposition, Plaintiff testified that the handwritten statement was an accurate account of what happened on July 20, 2005.  Pl.'s Dep. 36.  His deposition testimony expands on the statement somewhat, and indicates that the most significant pain he endured occurred at the end of the trip, when Officer Smith had difficulty removing the shackle from his leg.  Plaintiff testifies in his deposition that after he asked not to be shackled, Officer Smith explained to him that shackling was a required procedure:

>He told me, No, not going to do that.  He had to shackle me.  So I was just, like I said, I was against it, but he told me if I didn't get shackled, if he didn't shackle my ankle, then I wasn't going to X-rays.  So he shackled me.  I let him shackle me, but he put it on too tight, . . . and when he shackled it, it was so tight, like I said earlier, it had got stuck, but when we finally got over to Baldwin and he was trying to get them off where I could go in and see the orthopaedic surgeon, he couldn't get them off because he had put them on so tight.  He's sitting there trying to get them off.  He's yanking them.  I'm in pain.  He started yanking them, Just be still.  I'm not moving.  Just be still.
>   He tried for like ten minutes.  Not exaggerating.  He tried for about ten minutes to get the shackle off.  He couldn't get it.  Finally, he used the other officer's key and ended up getting them off.

Pl.'s Dep. 18-19.  Initially, Plaintiff did not recall Officer Smith reaching for a larger pair of shackles when the first pair was too tight or telling Plaintiff to move the shackles up if they were too tight.  Id. at 21.  When confronted with his prior written statement, however, he acknowledged that Officer Smith did try a larger pair of shackles after Plaintiff objected to the first pair.  Id. at 40.

Plaintiff's Affidavit does not mention that Officer Smith obtained a larger pair of shackles after Plaintiff complained that the smaller shackles would be too tight.  Instead, he states generally that Officer Smith applied the shackles as tightly as possible, so that "it dug into and compressed

4

Plaintiff's ankle." Pl.'s Aff. ¶ 18.  Plaintiff's Affidavit also mentions that Officer Smith had difficulty removing the shackle upon arrival at Baldwin, and that "the process of trying to release the left ankle shackle was very painful to the Plaintiff." Id. at ¶ 20.

Plaintiff does not bring any claim regarding the return trip from Baldwin to Rivers. In all three of his statements, Plaintiff states that he was shackled with plastic shackles that did not cause significant pain. These plastic shackles were provided by Baldwin officers, who intervened in a verbal dispute between Plaintiff and Officer Smith after Plaintiff refused to allow Officer Smith to shackle him again. Plaintiff describes the incident as follows:

> As we were preparing to leave [Officer Smith] was trying to put the shackles on my broken ankle. That's when I grabbed the shackle and told him that he wasn't putting it on my ankle. He at that time snatched the shackles from me and said I am about to put it on and you ain't hurt anyway. I told him to call a lieutenant down here (arguing approx 5 min). So finally a couple sergeants and a CO II came to the back gate to see what the problem was. So I explained to the sergeant at Baldwin that my ankle was broken and I refuse to have that shackle on my foot again. It got stuck on the way over here and I'm not going thru that again with him ([Officer Smith]). So Sergeant replied "Why don't you just get the plastic cuffs and put them on him." "You should have in the van right." [Officer Smith], "No sir, I don't think I have any." Sarge "Well we have some extra ones. I'll for them right now." Calling on radio.  5 min past and a officer came with the plastic shackles. I was then shackled with the plastic shackles.

Id. In his affidavit, Plaintiff states that the plastic shackles "caused much less pain." Pl.'s Aff. ¶ 24.

Plaintiff's three statements regarding the trip to Baldwin State Prison on July 20, 2005, taken as true and viewed in the light most favorable to Plaintiff, are insufficient to establish a violation of the Eighth Amendment. The Eighth Amendment protects prison inmates from the infliction of cruel and unusual punishment, not from all uses of force. "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore

5

discipline [and not] maliciously and sadistically to cause harm.'"  Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)(quoting Whitley v. Albers 475 U.S. 312, 320-21 (1986)).

The facts in the record show that Officer Smith did not act sadistically or maliciously.  It is undisputed that Officer Smith was required to apply the shackles by the prison's Standard Operating Procedures.  It is also undisputed in this case that Officer Smith made an effort to temper the severity of the shackles by finding and using a larger set of shackles after Plaintiff expressed his concerns about being shackled.  Plaintiff's deposition testimony indicates that the difficulty removing the shackle was a mishap related to a problem with the lock.  Officer Smith was finally able to remove the shackle by using another officer's key.  Even though Plaintiff received a second x-ray of his ankle shortly after Officer Smith had unshackled him, there is nothing in the record to indicate that Plaintiff's injury was aggravated as a result of the difficulty in unlocking the shackle.  Any pain that Plaintiff experienced, therefore, was temporary and incidental to having a broken ankle, not the result of "an unnecessary and wanton infliction of pain."  See Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999).

In addition to his excessive force claims related to the shackling incidents, Plaintiff also brings claims for deliberate indifference to serious medical needs related to a period he spent in segregation following his verbal dispute with Officer Smith.  Plaintiff contends that he was denied pain medication and was not allowed to wear his boots as directed by his doctor during his time in segregation.  He has not produced any evidence, however, to show that Officer Smith had any responsibility for the conditions of segregation.  As such he has failed to create a genuine issue of material fact for his claim of deliberate indifference against Officer Smith.

Wherefore, the Court having determined that there are no genuine issues of material fact and that Defendant Officer Smith is entitled to judgment as a matter of law, Defendant's Motion for Summary Judgment (Doc. 46) is hereby **GRANTED**.

It is SO ORDERED this 12th day of March, 2010.

                                        S/ C. Ashley Royal
                                        C. ASHLEY ROYAL, JUDGE
                                        UNITED STATES DISTRICT COURT

chw